**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CHLOE S.A.S.,

          Plaintiff,

vs.

JENNASGROUP.COM, AN
INDIVIDUAL, BUSINESS ENTITY, OR
UNINCORPORATED ASSOCIATION,

          Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Chloe S.A.S. ("Plaintiff"),[1] hereby sues Defendant, Jennasgroup.com, an Individual, Business Entity, or Unincorporated Association, also identified in the above caption ("Defendant"). Defendant is promoting, advertising, offering for sale, selling, and/or distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's trademarks within this district through its Internet based e-commerce store operating under the seller name, jennasgroup.com (the "E-commerce Store Name"). In support of its claims, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject

---

[1] Plaintiff is a subsidiary of Compagnie Financière Richemont SA, which is one of the world's leading luxury goods groups.

matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.     Defendant is subject to personal jurisdiction in this district because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district through, at least, the e-commerce store accessible and doing business in Florida and operating under its E-commerce Store Name. Alternatively, based on its overall contacts with the United States, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, a non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.     Plaintiff, Chloe S.A.S., is a company organized and existing under the laws of France, having its principal place of business at 5/7 Avenue Percier, 75008 Paris, France.

5.     Plaintiff's products are marketed and sold throughout the United States and worldwide, including within this district, through a network of carefully selected, authorized Chloe online retailers, high-end dealers and boutiques, and at prestigious department stores. Plaintiff is engaged in the business of manufacturing and distributing throughout the world, including within

this district, a variety of high-quality goods under multiple world-famous common law and federally registered trademarks, including those set forth below. Plaintiff offers for sale and sells its trademarked goods within the State of Florida, including this district, through its boutiques, at prestigious retailers, and via the Internet on its own website. Defendant, through the advertising, sale, and offers to sell of counterfeit and infringing versions of Plaintiff's branded products is directly and unfairly competing with Plaintiff's economic interests in the United States, including within the State of Florida, and causing Plaintiff irreparable harm and damage within this jurisdiction.

6.      Like many other famous trademark owners, Plaintiff suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendant herein, who wrongfully reproduce and counterfeit Plaintiff's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.

7.      To combat the harm caused by Defendant and others engaging in similar conduct, each year Plaintiff expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiff, to expend significant resources across a wide spectrum of efforts to protect both consumers and it from confusion and erosion of the goodwill embodied in Plaintiff's brand.

### **THE DEFENDANT**

8.      Defendant is an individual, business entity of unknown makeup, or an unincorporated association who, upon information and belief, either resides and/or operates in a

foreign jurisdiction and/or redistributes products from the same or similar sources in that location. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendant targets its business activities towards consumers throughout the United States, including within this district, through the operation of, at least, its commercial Internet based e-commerce store under the E-commerce Store Name.

9. Defendant is the past and present controlling force behind the sale of products bearing and/or using counterfeits and infringements of Plaintiff's trademarks as described herein.

10. Defendant directly engages in unfair competition with Plaintiff by advertising, offering for sale, and/or selling goods bearing and/or using counterfeits and infringements of one or more of Plaintiff's trademarks to consumers within the United States and this district through the e-commerce store using, at least, the E-commerce Store Name, as well as additional e-commerce store or seller identification aliases not yet known to Plaintiff. Defendant has purposefully directed some portion of its unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing versions of Plaintiff's branded goods into the State.

11. Defendant has registered, established or purchased, and maintained its E-commerce Store Name. Defendant may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Name by providing false and/or misleading information to the relevant e-commerce platforms where it offers to sell and/or sells. Defendant has anonymously registered and/or maintained its E-commerce Store Name for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

12. Defendant will likely continue to register or acquire new e-commerce store names, or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or

selling goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's trademarks unless permanently enjoined.

13.     Defendant's E-commerce Store Name, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiff's trademarks are essential components of Defendant's online activities and are one of the means by which Defendant furthers its counterfeiting and infringement scheme and causes harm to Plaintiff.  Moreover, Defendant is using Plaintiff's famous name and trademarks to drive Internet consumer traffic to its e-commerce store operating under the E-commerce Store Name, thereby increasing the value of the E-commerce Store Name and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

14.     Plaintiff is the owner of all rights, title, and interest in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Plaintiff's Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| Chloé | 0,950,843 | January 16, 1973 | IC 025 – Ladies' articles of clothing for outerwear-, namely, frocks, dresses, coats, skirts, blouses, vests; vests, and ladies' shoes |
| CHLOE | 1,491,810 | June 14, 1988 | IC 018 – Handbags, purses<br><br>IC 025 – Bathrobes, bathing suits, coats, dresses, hats, jackets, shirts, blouses, trousers, skirts, scarves, shoes |

| Chloé | 3,291,996 | September 11, 2007 | IC 018 – Goods made of leather and imitations of leather, namely, handbags, purses, credit card cases and holders, key cases, coin purses |
|-------|-----------|--------------------|-----------------------------------------------------------------------------------------------------------------------------------------|

Plaintiff's Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for Plaintiff's Marks are attached hereto as Composite Exhibit "1."

15. Plaintiff's Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality goods for an extended period of time.

16. Plaintiff's Marks have been used in commerce by Plaintiff long prior in time to Defendant's use of copies of those Marks. Plaintiff's Marks have never been assigned or licensed to Defendant in this matter.

17. Plaintiff's Marks are symbols of Plaintiff's quality, reputation and goodwill and have never been abandoned. Plaintiff has carefully monitored and policed the use of Plaintiff's Marks.

18. Plaintiff's Marks are well known and famous and have been for many years. Plaintiff expends substantial resources developing, advertising and otherwise promoting Plaintiff's Marks and products bearing and/or using Plaintiff's Marks. Plaintiff's Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

19. Plaintiff extensively uses, advertises and promotes Plaintiff's Marks in the United States in association with the sale of high-quality goods.

20. As a result of Plaintiff's efforts, Plaintiff's Marks have acquired fame in the consumer market for a wide variety of products.

21. Plaintiff's Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as an identifier of high-quality goods.

6

22.     Genuine goods bearing and/or using Plaintiff's Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Plaintiff's overall marketing and consumer education efforts. Thus, Plaintiff expends significant monetary and other resources on Internet marketing and consumer education regarding its products, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Plaintiff and its authorized retailers to educate consumers fairly and legitimately about the value associated with Plaintiff's brand, the goods sold thereunder, and the problems associated with the counterfeiting of Plaintiff's trademarks.

**<u>Defendant's Infringing Activities</u>**

23.     Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiff's Marks (the "Counterfeit Goods") through at least the e-commerce store operating under the E-commerce Store Name. Specifically, Defendant is using Plaintiff's Marks to initially attract online consumers and drive them to Defendant's e-commerce store operating under its E-commerce Store Name. Defendant is using virtually identical copies of one or more of Plaintiff's Marks for different quality goods. Plaintiff has used its trademarks extensively and continuously before Defendant began offering counterfeit and confusingly similar imitations of Plaintiff's products.

24.     Defendant's Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods. Defendant is actively using, promoting, and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of its Counterfeit Goods with

the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff, despite Defendant's knowledge that it is without authority to use Plaintiff's Marks.  Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's e-commerce store are genuine goods originating from, associated with, and/or approved by Plaintiff.

25.     Defendant advertises its e-commerce store, including its Counterfeit Goods offered for sale, to the consuming public via the e-commerce store on at least the E-commerce Store Name. In so doing, Defendant improperly and unlawfully uses one or more of Plaintiff's Marks without Plaintiff's permission.

26.     Defendant is, upon information and belief, employing and benefiting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of Plaintiff's Marks. Specifically, Defendant is using counterfeits and infringements of Plaintiff's famous name and Plaintiff's Marks to make its e-commerce store, which sells unauthorized goods, appear more relevant and attractive to consumers searching for both Plaintiff's and non-Plaintiff's goods and information online. By its actions, Defendant is contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods. Defendant is causing harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's Marks by viewing inferior products in either

the pre or post sale setting, and/or, (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

27.     Defendant is conducting and targeting its counterfeiting and infringing activities toward consumers, likely causing harm within this district and elsewhere throughout the United States.  As a result, Defendant is defrauding Plaintiff and the consuming public for Defendant's own benefit.

28.     At all times relevant hereto, Defendant has had full knowledge of Plaintiff's ownership of Plaintiff's Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

29.     Defendant's use of Plaintiff's Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of its Counterfeit Goods, is without Plaintiff's consent or authorization.

30.     Defendant is engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

31.     Defendant's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendant's wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendant's Counterfeit Goods, which there is not.

32.     Defendant's payment and financial accounts are being used by Defendant to accept, receive, and deposit profits from Defendant's trademark counterfeiting and infringing and unfairly

9

competitive activities connected to its E-commerce Store Name and any other alias e-commerce store names being used and/or controlled by it.

33.     Further, Defendant, upon information and belief, is likely to transfer or secrete its assets to avoid payment of any monetary judgment awarded to Plaintiff.

34.     Plaintiff has no adequate remedy at law.

35.     Plaintiff is suffering irreparable injury and has suffered substantial damages because of Defendant's unauthorized and wrongful use of Plaintiff's Marks. If Defendant's intentional counterfeiting and infringing and unfairly competitive activities are not permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit.

36.     The harm and damages sustained by Plaintiff has been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

## COUNT I – TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

37.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 36 above.

38.     This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeit and confusingly similar imitations of Plaintiff's Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

39.     Defendant is promoting and otherwise advertising, selling, offering for sale, and/or distributing goods bearing and/or using counterfeits and/or infringements of one or more of Plaintiff's Marks. Defendant is continuously infringing and inducing others to infringe Plaintiff's

Marks by using one or more of Plaintiff's Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiff's branded goods.

40.     Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.

41.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to Plaintiff and are unjustly enriching Defendant with profits at Plaintiff's expense.

42.     Defendant's above-described unlawful actions constitute counterfeiting and infringement of Plaintiff's Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

43.     Plaintiff has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

## COUNT II – FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

44.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 36 above.

45.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks have been widely advertised and offered for sale throughout the United States via the Internet.

46.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiff's Marks are virtually identical in appearance to Plaintiff's genuine goods. However, Defendant's Counterfeit Goods are different in quality. Accordingly, Defendant's

11

activities are likely to cause confusion among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

47.     Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

48.     Defendant has authorized infringing uses of one or more of Plaintiff's Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods.

49.      Additionally, Defendant is using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving Plaintiff of valuable marketing and educational space online, which would otherwise be available to Plaintiff, and (ii) reducing the visibility of Plaintiff's genuine goods on the World Wide Web and across social media platforms.

50.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

51.     Plaintiff has no adequate remedy at law and has sustained injury and damages caused by Defendant's conduct. Absent an entry of an injunction by this Court, Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendant is unjustly profiting.

## COUNT III – COMMON LAW UNFAIR COMPETITION

52.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 36 above.

53.     This is an action against Defendant based on its promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to one or more of Plaintiff's Marks in violation of Florida's common law of unfair competition.

54.     Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiff's Marks. Defendant is also using counterfeits and infringements of one or more of Plaintiff's Marks to unfairly compete with Plaintiff and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

55.     Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's e-commerce store as a whole and all products sold therein by its use of Plaintiff's Marks.

56.     Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

57.     Plaintiff hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 36 above.

58.     Plaintiff is the owner of all common law rights in and to Plaintiff's Marks.

59.     This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods bearing and/or using one or more of Plaintiff's Marks.

60.     Specifically, Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiff's Marks.

61.     Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendant's Counterfeit Goods bearing and/or using Plaintiff's Marks.

62.     Plaintiff has no adequate remedy at law and has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

## PRAYER FOR RELIEF

63.     WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a.     Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell its Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiff's Marks; from using Plaintiff's Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendant as being

14

sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiff's Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks; and from otherwise unfairly competing with Plaintiff.

b. Entry of a permanent injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

c. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, those acting in concert or participation as service providers to Defendant, who have notice of the injunction, shall disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Name, through which Defendant engages

15

in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, any Internet marketplace or social media website operator, administrator, registrar, and/or top level domain (TLD) Registry for the E-commerce Store Name and any other alias e-commerce store names being used by Defendant who are provided with notice of an injunction issued by the Court, shall disclose to Plaintiff the true identity and contact information, including any e-mail addresses for the registrant of the E-commerce Store Name.

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, Defendant and the top level domain (TLD) Registry for the E-commerce Store Name, or its administrator, including backend registry operators or administrators, place the E-commerce Store Name, and any other e-commerce store names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Plaintiff's Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files that link the E-commerce Store Name, and any other e-commerce store names used by Defendant, to the IP address where the associated e-commerce store name is hosted.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiff's election, transferring the E-commerce Store Name and any other e-commerce store names used by

16

Defendant to engage in its counterfeiting of Plaintiff's Marks to Plaintiff's control so they may no longer be used for unlawful purposes.

g. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Plaintiff to request any Internet search engines or service provider referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Name, which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Name and/or permanently disable the references or links to all URLs of the E-commerce Store Name used by Defendant to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks, based upon Defendant's unlawful activities being conducted via the E-commerce Store Name as a whole and via any specific URLs identified by Plaintiff.

h. Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s) to assign all rights, title, and interest, to its E-commerce Store Name, and any other e-commerce store name used by Defendant, to Plaintiff and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i. Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s) to instruct in writing all search engines to permanently delist or deindex the E-commerce Store Name, and any other e-commerce store names used by Defendant, and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by

17

the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s) to instruct the Registrar for the E-commerce Store Name in writing to permanently close the registration account(s) in which any E-commerce Store Name is located and, if within five (5) days of entry of such Order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

k.      Entry of an order requiring, upon Plaintiff's request, Defendant to request in writing permanent termination of any messaging services, e-commerce store names, usernames, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, or social media website.

l.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used or have been used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiff's Marks.

m.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiff to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Name to disclose to

Plaintiff the true identities and contact information for the registrants of the E-commerce Store Name.

n.      Entry of an order requiring Defendant to account to and pay Plaintiff for all profits and damages resulting from Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiff be awarded statutory damages from Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

o.      Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

p.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiff's request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Plaintiff all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Name, or other alias e-commerce store names used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

q.      Entry of an order requiring Defendant, at Plaintiff's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived

19

concerning the nature, characteristics, or qualities of Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

      r.      Entry of an award of pre-judgment interest on the judgment amount.

      s.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 4, 2026.            Respectfully submitted,

                        STEPHEN M. GAFFIGAN, P.A.

                        By:    **Stephen M. Gaffigan**
                        Stephen M. Gaffigan (Fla. Bar No. 025844)
                        Virgilio Gigante (Fla. Bar No. 082635)
                        T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
                        401 East Las Olas Blvd., # 130-453
                        Ft. Lauderdale, Florida 33301
                        Telephone: (954) 767-4819
                        E-mail: Stephen@smgpa.cloud
                        E-mail: Leo@smgpa.cloud
                        E-mail: Raquel@smgpa.cloud

                        Attorneys for Plaintiff